```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA
                              CASE NO. 12-Cv-60647-COHN
                                  (09-Cr-60229-COHN)
                              MAGISTRATE JUDGE P. A. WHITE
```

JAY ANTHONY RICHITELLI,      :

       Movant,      :

v.                          :          <u>REPORT OF</u>
<u>MAGISTRATE JUDGE</u>

UNITED STATES OF AMERICA, :

       Respondent.      :

_____

## I.  Introduction

This matter is before this Court on Jay Anthony Richitelli's motion to vacate pursuant to 28 U.S.C. §2255, attacking his convictions and sentences, entered following a jury trial in case no. 09-Cr-60339-COHN.

This case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Proceedings in the United States District Courts.

The Court has reviewed the motion (Cv DE# 1, 6); the government's answer (Cv DE# 10); Richitelli's reply (Cv DE# 13); the Presentence Investigation Report (PSI); and all pertinent portions of the underlying criminal file.

## II.  Facts and Procedural History

The Eleventh Circuit described the factual and procedural background of the underlying criminal proceedings in <u>United States</u>

v. Richitelli, 420 Fed.Appx. 861, 862-64 (11th Cir. 2011) as
follows:

### A. Attempted Robbery of Gas Station Courier

Twin Oil Company ("Twin Oil") owns 32 gas stations
in Florida. Joh nn Cherico, Twin Oil's money courier, ran
a regular, twice-weekly pick-up from Twin Oil's seven
Sunoco gas stations in Broward County. The only person
who knew Cherico's route was his supervisor. The last gas
station on Cherico's route was at 7520 Pembroke Road. On
August 25, 2009, Cherico retrieved $64,000 from the seven
gas stations.

On that date, due to a recent rash of burglaries,
Pembroke Pines Detective Dean Soubasis was patrolling in
the area of 7520 Pembroke Road in an unmarked car.
Detective Soubasis saw a silver Volkswagen with a driver
and a passenger parked across a sidewalk. Just before the
Volkswagen pulled away, Detective Soubasis saw the
passenger put on a pair of black gloves.

Detective Soubasis followed the Volkswagen and, when
it failed to stop at a stop sign, performed a traffic
stop. Detective Soubasis issued the driver, Henry
Wainwright, a citation. Detective Soubasis smelled
marijuana coming from the car. Detective Soubasis asked
Wainwright to exit the car, searched Wainwright and found
a small bag of marijuana and some rolling papers in
Wainwright's pocket.

Wainwright's passenger, Niegel Smith, admitted to
Detective Soubasis that he and Wainwright were on their
way to rob a money courier at a Sunoco gas station around
the corner (i.e., 7520 Pembroke Drive). Smith indicated
that he and Wainwright were waiting for a call from a
third person, Defendant Richitelli, who was watching the
gas station's courier. Detective Soubasis arrested
Wainwright and Smith. A search of Wainwright's car
uncovered a loaded firearm under the front passenger's
seat and some black gloves.

Smith testified that, since November 2008, Defendant
Richitelli had been receiving information about the money
courier's route from an unknown "inside person" who owed
Defendant Richitelli money. Defendant Richitelli and
Wainwright approached Smith on August 13, 2009, and asked
him to help rob the money courier. Smith agreed. The
three men decided to commit the robbery on August 29,

2

2009, because, according to the inside person, the courier collected more money when school was in session.

A week beforehand, Richitelli, Smith and Wainwright began planning how to execute the robbery. Defendant Richitelli had a list of the courier's stops, and the three men conducted surveillance of the courier as he drove his route. According to their plan, Richitelli's job during the robbery was to surveil the courier and let Smith and Wainwright know when the courier was headed to the last pick-up. Smith's job was to approach the courier with the firearm and take the money from him and drive away in the courier's car. Wainwright's job was to drive Smith to the gas station and then meet Smith at a prearranged location after the robbery.

The night before the planned robbery, Richitelli met with the inside person, who gave Richitelli information about the courier. The morning of the robbery, the three men met at Richitelli's residence. Richitelli gave Smith a gun and some black gloves to use in the robbery. The gun was wrapped in a white towel to avoid fingerprints. Richitelli also gave Smith information about the courier's route, appearance, car, gun and amount of money. Richitelli left in a Chrysler to go to the courier's second-to-last stop to conduct surveillance. Wainwright and Smith left in the Volkswagen and circled the area around the last stop.

Eventually, Wainwright parked on a sidewalk near the gas station to roll a marijuana cigarette. Richitelli called and said the courier was leaving the second-to-last pick-up. Wainwright drove the Volkswagen off the sidewalk and was heading toward the gas station when he was pulled over by law enforcement. After the car was stopped, Smith saw Richitelli's Chrysler drive by.

## B. Richitelli's Confession

Later that day, Gerard Starkey, a task force officer assigned to the Federal Bureau of Investigation ("FBI"), interviewed Defendant Richitelli at the Pembroke Pines Police Department. After receiving a *Miranda* warning, Defendant Richitelli admitted his participation in the attempt to rob the money courier, but claimed that Wainwright planned the operation. Richitelli said that he was a confidential informant ("CI") working with

Detective John Sousa of the Broward County Sheriff's Office ("BCSO"), but admitted that he had not told Detective Sousa about the planned robbery. Agent Starkey contacted Detective Sousa and confirmed that Richitelli was a CI and that Detective Sousa was unaware of the plan to rob the money courier.

## C. Richitelli's CI Relationship with Detective Sousa

Detective Sousa met Richitelli in November 2008 through the Broward County State Attorney's Office. Richitelli was contracted to be a CI by Detective Sousa on behalf of the BCSO. Under his CI contract, Richitelli: (1) was not allowed, *inter alia,* to possess a firearm or be involved in any criminal activity, and (2) was required to notify Detective Sousa and await permission before investigating anyone. At the time of the attempted robbery, Richitelli was working with Detective Sousa on a prescription-pain-killer drug operation. Although Detective Sousa and Richitelli spoke on the telephone on August 24 and 25, 2009, Richitelli never mentioned a robbery planned for August 25.

According to Detective Sousa, Richitelli had a tendency to talk a lot and, during one investigation, waited three days before alerting Detective Sousa that he had been approached about committing a crime. Detective Sousa had counseled Richitelli to contact him before meeting with any suspects.

## D. Indictment

After his confession, Richitelli was arrested. Richitelli was appointed counsel, who filed a written invocation of Richitelli's right to remain silent and to counsel. A superseding indictment charged Richitelli, along with Wainwright and Smith, with conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), (Count 1); attempting a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), (Count 2); conspiring to use and carry a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924( o ), (Count 3); carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), (Count 4); and possessing a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), (Count 6). Richitelli filed a notice of public

authority defense, claiming that, at the time of his arrest, he was working as a documented CI for Detective Sousa.

The movant proceeded to trial where the jury found him guilty on all counts. Id. at 866.  Prior to sentencing, a PSI was prepared establishing the following. The PSI set the movant's base offense level at 24, pursuant to U.S.S.G. §2K2.1(a)(2). (PSI ¶29). Under §3B1.1(c), the offense level was increased by two levels because the defendant was an organizer, leader, manager or supervisor in any criminal activity other than described in §3B1.1(a) or (b). (PSI ¶32).

The movant was considered a career offender because he was at least eighteen years old at the time of the instant offense; the instant offense was a felony for a controlled substance; and he had at least two prior felony convictions for a controlled substance offense. U.S.S.G. §4B1.1(a). (PSI ¶35).  The PSI relied on the following prior convictions: convictions for conspiracy to commit armed burglary, armed burglary of a dwelling with assault or battery with a deadly weapon, armed robbery with a firearm and kidnapping with a firearm in case no. 86-7926C; convictions for aggravated assault on a law enforcement officer and resisting arrest with violence in case no. 94-10547CF10A; and a RICO offense charging violent acts in case no. 95-11685CF10A. (PSI ¶¶35, 40, 45, 47).  Under the chapter four enhancement paragraph, the PSI further stated that the defendant had multiple other convictions for violent crimes and he was an armed career criminal because he was subject to an enhanced sentence under provisions of 18 U.S.C. §924(e) pursuant to §4B1.4(a).  (PSI ¶35). As a result, the guideline computations were ultimately governed by §4B1.1(c)(2). (PSI ¶35).  The total offense level was set at 37. (PSI ¶37).

The probation officer next determined that the movant had a total of 18 criminal history points and a criminal history category VI. (PSI ¶51).

Statutorily, as to <u>counts 1 and 2</u>, the movant faced a mandatory life sentence, pursuant to the enhanced penalties under 18 U.S.C. §1951(a) and 3559(c); as to <u>count 3</u>, the term of imprisonment was zero to 20 years pursuant to 18 U.S.C. §924(o); and as to <u>count 6</u>, the term of imprisonment was 15 years to life pursuant to 18 U.S.C. §924(e). (PSI ¶38). With respect to count 4, the movant faced a term of not less than 5 years, and not more than life, to run consecutive to any other term of imprisonment, pursuant to 18 U.S.C. §924(c)(1)(A)(i). (PSI ¶87). Based on a total offense level of 37 and a criminal history category VI, the movant's resulting guideline range was 360 months to life in prison. (PSI ¶88). However, pursuant to §5G1.2(b), the guideline imprisonment sentence was life plus a consecutive 60 months. (PSI ¶88).

Richitelli subsequently appeared for sentencing. The district court sentenced Richitelli to imprisonment terms of life on Counts 1 and 2, 240 months' imprisonment on Count 3, and 180 months' imprisonment on Count 6, all to run concurrently, and 60 months' imprisonment on Count 4, to run consecutively to the other counts. *Richitelli*, 420 Fed.Appx. at 866.

Richitelli appealed his convictions and sentences and raised the following issues: First, "the district court should have suppressed his recorded call to Detective Sousa because Richitelli had already invoked his right to counsel and did not waive it before speaking to Detective Sousa." *Id.* Second, "the district court erred in discussing his decision whether to testify." *Id.* at 868. Third, "the district court's jury instruction as to Count 3 constitutes reversible error because it did not state the proper

6

object of the conspiracy." Id. Lastly, "the district court erred when it excluded Agent Emerson's testimony on the ground that it was not relevant." Id. at 869. In a written unpublished opinion, the Eleventh Circuit affirmed the defendant's convictions and sentences, thereby rejecting all four arguments. Id.

Richitelli filed a petition for writ of certiorari in the Supreme Court, which was denied in Richitelli v. United States, 131 S.Ct. 2134, 179 L.Ed.2d 921, 79 USLW 3593 (U.S. Apr 18, 2011) (NO. 10-9574).

On Aril 11, 2012, Richitelli filed the §2255 petition at issue in the instant proceedings. Construing the arguments liberally as afforded pro se litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant asserts the following:

**Claim 1**: Ineffective assistance of counsel for failing to explore an insanity defense, given knowledge of Richitelli's medical history;

**Claim 2**: Trial counsel was ineffective for failing to allow Richitelli to testify on his own behalf because it would have interfered with counsel's defense strategy;

**Claim 3**: Trial counsel was ineffective for failing to call any witnesses to testify and failing to properly cross-examine the government's witnesses;

**Claim 4**: Trial counsel was ineffective for failing to properly cross-examine the government's witnesses.

**Claim 5**: The movant was denied his right to a fair trial because his lawyer was operating under an actual conflict of interest.

(Cv DE# 1, 6).

7

IV.   <u>Standard of Review</u>

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." <u>Id</u>. Section 2255 relief is limited, however. To obtain relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." <u>United States v. Frady</u>, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)(rejecting the plain error standard as not sufficiently deferential to a final judgment).

<u>General Legal Principles</u>

Because movant asserts in his motion to vacate that counsel rendered ineffective assistance, this Court's analysis begins with the familiar rule that the Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defense." U.S. CONST. amend. VI. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The standard is the same for claims challenging appellant counsel's effectiveness. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987).

To establish deficient performance, the movant must show that,

8

in light of all the circumstances, counsel's performance was outside the wide range of professional competence. Strickland, supra. The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001)(quoting Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. Id. at 1317. The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Chandler, 218 F.3d at 1313. Instead the test is whether what counsel did was within the wide range of reasonable professional assistance. Id. at 1313 n.12.

Thus, in assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 689-90. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. No lawyer can be expected to have considered all of the ways. Chandler, 218 F.3d at 1316. Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Keeping these principles in mind, the Court must now determine whether counsel's performance was both deficient and prejudicial under Strickland. As indicated, Courts must be highly deferential in reviewing counsel's performance, and must apply the strong presumption that counsel's performance was reasonable. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. See also Chandler v. United States, 218 F.3d at 1314. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. ____, ____, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). See also Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006)(citing Chandler v. United States, 218 F.3d at 1313).

As recently noted by the Supreme Court:

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689-690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed .2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S. at 690, 104 S.Ct. 2052.

Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 788 (2011). See

10

also <u>Premo v. Moore</u>, ___ U.S. ___, 131 S.Ct. 733, 739-740, 2011 WL 148253, *5 (2011). If the movant cannot meet one of <u>Strickland</u>'s prongs, the court does not need to address the other prong. <u>Strickland</u>, 466 U.S. at 697, 104 S.Ct. 2069 (explaining a court need not address both prongs of Strickland if the defendant makes an insufficient showing on one of the prongs). <u>See also</u> <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004).

As will be demonstrated in more detail infra, the movant is not entitled to vacatur on the claims presented.[1] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the movant a fundamentally trial and due process of law. The movant therefore is not entitled to habeas corpus relief. <u>See</u> <u>Fuller v. Roe</u>, 182 F.3d 699, 704 (9th Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), <u>overruled on other grounds</u>, <u>Slack v. McDaniel</u>, 529 U.S. 473, 482 (2000). <u>See also</u> <u>United States v. Rivera</u>, 900 F.2d 1462, 1470 (10th Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the

---

[1]Briefly, the evidence against the movant was more than sufficient to support his convictions. The movant has not shown that the result of the trial or appeal would have been affected had counsel proceeded differently. Further, no denial of due process has been demonstrated. To the contrary, it is clear after independent review of the record that the movant received a fair trial, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to habeas corpus relief in this collateral proceeding.

Moreover, after independent review of the record in its entirety, any other claims, subclaims, or arguments not specifically addressed in this Report, individually identified, or otherwise subsumed within each of the claims presented herein, have been considered by the undersigned and are found to be without merit, warranting no further discussion.

proceedings were not fundamentally unfair or unreliable. <u>See</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 (1993).

## V.  <u>Discussion of the Claims</u>

Under **claim 1**, the movant faults counsel for failing to have him examined in order to determine his mental competency prior to proceeding to trial. The movant notes that at the time of the trial, he was receiving disability checks from the federal government based on his mental disabilities.

The law is clear that it is a fundamental requirement of Due Process that defendants be mentally competent upon entering a guilty plea or proceeding to trial. The test for determining a defendant's competency to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." <u>Dusky v.</u> <u>United States</u>, 362 U.S. 402 (1960). The mere presence of mental illness or other mental disability at the time of trial does not necessarily mean that a defendant is incompetent under the <u>Dusky</u> test. The mental illness or disability must have been so debilitating that the defendant was unable to consult with his lawyer and did not have a rational and factual understanding of the proceedings. <u>See generally</u> <u>Bolius v. Wainwright</u>, 597 F.2d 986, 990 (5 Cir. 1979). No such showing has been made here.

Relevant indicia of a defendant's incompetence include a defendant's irrational behavior, courtroom demeanor, or medical opinion. <u>Drope v. Missouri</u>, 420 U.S. 162 (1975). Because it is often defense counsel who is in the best position to discover whether the defendant's competency is questionable, failure of defense counsel to raise competency is compelling evidence that the

defendant's competency was not really in doubt. <u>See</u>: <u>Watts v.</u> <u>Singletary</u>, <u>supra</u>; <u>Adams v. Wainwright</u>, 764 F.2d 1356, 1360 (11th Cir. 1985).

The movant's defense counsel was aware of the disability checks and filed a post-trial motion for appointment of a psychologist to determine competency. (Cr DE# 198). Counsel stated therein, "prior to the trial, undersigned counsel received a report from the Social Security Administration which determined that Richitelli is mentally disabled. Significantly, it found that Richitelli has an IQ of 63, bipolar disorder and chronic psychiatric treatment. . . . This document caused counsel some pause and reflection. After discussing the matter with all concerned, counsel believed, at the time, that Richitelli was competent to stand trial and took no further action." (<u>Id</u>.).

The movant's allegation that he was not competent, which prevented him from assisting his attorney is wholly conclusory. The fact that he had an IQ of 63 is insufficient to support his claim that he was incompetent. Furthermore, his claim that he was incompetent is belied by his claim that counsel was ineffective in failing to call the movant to testify on his own behalf. If he was not competent, he would not have been able to testify. Although the movant may have suffered from mental health issues, it appears that he was competent at all material times. Additionally, there is nothing of record to suggest that the movant was legally insane. Independent review of the record reveals otherwise. Consequently, even if counsel had requested that the movant undergo additional psychological and/or psychiatric evaluations and/or testing prior to the trial, no showing has been made here that such an exam was warranted, nor that the court would have granted the request. Consequently, no prejudice has been established arising from counsel's failure to pursue this claim. He is therefore entitled to

no relief on this claim.

Under **claim 2**, the movant alleges ineffective assistance of counsel for failing to allow Richitelli to testify on his own behalf because it would have interfered with counsel's defense strategy.

On direct appeal, the Eleventh Circuit provided the following facts regarding the movant's decision to testify at trial.

### District Court's Inquiry Into Richitelli's Decision to Testify

During trial, but out of the jury's presence, the district court asked defense counsel, "Do you mind if I inquire of your client regarding his right to testify and his right not to testify?" Defense counsel responded that he "would support the Court to do that," and the district court confirmed with Richitelli that: (1) he understood that he had a right to testify and not to testify; (2) he understood that if he elected to testify, information about the number of felony convictions he had could be brought out and he would be subject to cross-examination; (3) he had fully discussed the issue of whether to testify with his attorney; and (4) he had not yet decided whether to testify.

The next day, before the defense rested, the district court asked whether Richitelli was going to testify. Defense counsel stated, "I don't believe so, but at this time I would invite the Court to voir dire him." The district court pointed out that it had already asked Richitelli some questions and then confirmed that the government would not object to a jury instruction on the public authority defense even if Richitelli did not testify. Defense counsel then asked Richitelli whether he wanted the district court to inquire. Richitelli nodded his head affirmatively.

The district court again discussed with Richitelli his decision whether to testify and learned that Richitelli had decided not to take the stand, as follows:

THE COURT: All right. Well, I will be more

than happy to. As I was explaining to you yesterday, you essentially have two rights. You have a right to testify and you have a right not to testify. If you do elect to testify, you would be subject to cross-examination by the government.

In other words, Mr. Chase could ask you questions, and he could bring out the fact that you've been convicted of more than one felony.

Now, I don't know how many felony convictions you have, but whatever number that is, Mr. Chase could bring that out. As it stands right now, the jury is only aware of one felony conviction.

Now, if you elect not to testify, the jury is advised that that cannot be considered by them in any way in arriving at their verdict. They can't conclude that by virtue of the fact that you elected not to testify that you've got something to hide, and you are guilty.

Have you had enough time to discuss the issue of whether or not you should testify with your two lawyers?

THE DEFENDANT: Yes, Your Honor. I discussed with Mr. Tucker about me testifying in the case, and he gave me his statement and, you know, his theory on it. And since I had my accident with an aneurysm and my IQ level ain't very high, so I decided I ain't going to testify because I won't remember everything periodically because I lose my memory sometimes.

THE COURT: Is that your decision?

THE DEFENDANT: Yes, Your Honor.

15

Richitelli, 420 Fed. Appx. at 865-66.

Richitelli argued on appeal that the trial court erred in connection with his right to testify.  Specifically, the Eleventh Circuit held as follows on this issue:

**District Court's Inquiry into Richitelli's Decision not to Testify**

Richitelli argues that the district court erred in discussing his decision whether to testify. We agree with the government that Richitelli invited any error in this regard.

We are precluded "from reviewing an issue raised on appeal if it has been *waived* through the doctrine of invited error." *United States v. Brannan,* 562 F.3d 1300, 1306 (11th Cir.2009). This Court has applied the invited error doctrine when the alleged error was the result of a defendant's responses to the district court's questions. *See, e.g., United States v. Thayer,* 204 F.3d 1352, 1355 (11th Cir.2000).

Here, the district court received defense counsel's permission before directly addressing Richitelli about his right to testify. Later, defense counsel asked the district court to discuss the issue again with Richitelli. When the district court seemed reluctant and pointed out that he had already discussed Richitelli's right to testify with him, defense counsel asked Richitelli whether he wanted the district court to discuss his right to testify again. Richitelli indicated that he did.[FN4]

> FN4. To the extent Richitelli's argument could be construed as a claim of ineffective assistance of counsel, we decline to address this issue on direct appeal. *See United States v. Souder,* 782 F.2d 1534, 1539-40 (11th Cir.1986).

Even if Richitelli has not invited error, he did not object to the inquiry in the district court, and there is no plain error. *See United States v. Peters,* 403 F.3d

1263, 1270 (11th Cir.2005). To be "plain," an error must be clear under current law. *United States v. Frank,* 599 F.3d 1221, 1239 (11th Cir.), *cert. denied,* --- U.S. ----, 131 S.Ct. 186, 178 L.Ed.2d 112 (2010). The cases Richitelli relies upon conclude only that a trial court is not required to advise a criminal defendant of his right to testify and do not, as Richitelli suggests, restrict trial courts from such an inquiry. *See United States v. Teague,* 953 F.2d 1525, 1532–33 (11th Cir.1992); *United States v. Van De Walker,* 141 F.3d 1451, 1452 (11th Cir.1998). Richitelli has not shown that the district court's inquiry was plain error.

<u>Richitelli</u>, 420 Fed. Appx. at 86.

At this stage in the proceedings, the movant argues that had he testified in his own defense, the outcome would have been different.

The law is clear that a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. <u>Rock v. Arkansas</u>, 483 U.S. 44, 49-52 (1987); <u>United States v. Teague</u>, 953 F.2d 1525, 1532 (11 Cir. 1992) (<u>en banc</u>). This right is personal to the defendant, and cannot be waived by the trial court or defense counsel. <u>Teague</u>, <u>supra</u>; <u>Brown v. Artuz</u>, 124 F.3d 73, 77-78 (2nd Cir. 1997). The proper vehicle for an argument that a defendant's right to testify was violated by her trial counsel is a claim of ineffective assistance of counsel, which requires analysis under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Gallego v. United States</u>,174 F.3d 1196 (11th Cir. 1999)(<u>citing Teague</u>, 953 F.2d at 1534); <u>Brown</u>, 124 F.3d at 79-80; <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir.), <u>cert. den'd</u>, 120 S.Ct. 139 (1999). <u>United States v. Tavares</u>, 100 F.3d 995, 998 (D.C. Cir. 1996).

In <u>Teague</u>, <u>supra</u>, the Eleventh Circuit held that an attorney who refused to accept the defendant's decision to testify, or

failed to inform him/her of his/her absolute right to testify "would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected," and counsel's action would not have fallen "within the range of competence demanded of attorneys in criminal cases." 953 F.2d at 1534 (quoting Strickland v. Washington, supra). The Teague court, having the benefit of testimony from an evidentiary hearing on the defendant's motion for a new trial, found that counsel's performance had not been deficient, and therefore did not address the prejudice prong of the Strickland analysis. Teague, 953 F.2d at 1535.

Not all assertions of ineffective assistance of counsel with regard to the right to testify or not testify warrant an evidentiary hearing. Underwood v. Clark, 939 F.2d 473, 476 (7 Cir. 1991)(barebones assertion by a defendant is insufficient to require a hearing on a claim that the right to testify was denied, greater particularity and some substantiation such as an affidavit from the lawyer who allegedly forbade his client to testify are necessary to give the claim sufficient credibility to warrant a further investment of judicial resources)(emphasis added); Siciliano v. Vose, 834 F.2d 29 (1 Cir.1987)(defendant's conclusory allegation that his attorney refused to allow him to testify in his own behalf was insufficient to entitle him to hearing on issue of whether his right to testify was violated); Passos-Paternina v. United States, 12 F. Supp. 231, 239-40 (D. Puerto Rico 1998).

The Fourth Circuit has held that a hearing was not necessary where the defendant suffered no prejudice under Strickland, supra, because "his testimony at trial only helped his case...." Sexton v. French, 163 F.3d 874, 883 (4 Cir. 1998), cert. den'd, 120 S.Ct. 139 (1999). As stated, the Eleventh Circuit has not determined whether a conclusory allegation of interference with the right to

18

testify is sufficient to warrant further inquiry, such as the grant
of a hearing.[2] <u>See</u>, <u>e.g.</u> <u>Brown</u>, 124 F3.d at 80. However, the
Eleventh Circuit case law is also clear that an evidentiary hearing
on a §2255 ineffective-assistance claim should be held <u>only</u> when
the movant asserts facts that, if true, warrant habeas relief.
<u>See Diaz v. United States</u>, 930 F.2d 832, 834 (11th Cir. 1991). The
court need not hold an evidentiary hearing when the claims are
frivolous, are unsupported conclusory allegations, or are
contradicted by the record. <u>Holmes v. United States</u>, 876 F.2d 1545,
1553 (11th Cir. 1989).

       In addition, it is also clear that a movant must prove
prejudice in order to be entitled to relief on such a claim. <u>See</u>
<u>Teague</u>, <u>supra</u>. In order to satisfy the prejudice prong, the movant
must demonstrate that there is "a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding
would have been different. <u>Strickland</u>, <u>supra</u>. at 694. In other
words, the movant must prove "that counsel's errors were so serious
as to deprive the defendant of a fair trial, a trial whose result
is reliable." <u>Strickland</u>, 466 U.S. at 687; <u>see also</u>, <u>Lockhart v.</u>
<u>Fretwell</u>, 506 U.S. 364, 369 (1993), <u>citing</u>, <u>Kimmelman v. Morrison</u>,
477 U.S. 365 (1986)("The essence of an ineffective assistance of
counsel claim is that counsel's unprofessional errors so upset the
adversarial balance between defense and prosecution that the trial
was rendered unfair and the verdict rendered suspect.").

       In <u>Fretwell</u>, the Supreme Court also concluded that "an
analysis focusing solely on mere outcome determination, without
attention to whether the result of the proceeding was fundamentally

---

       [2]In <u>Gallego v. United States</u>, 174 F.3d (11 Cir. 1999) the Court rejected
a "*per se* credit counsel in case of counsel rule," with regard to credibility
findings in evidentiary hearings, but does not address the issue of when a
hearing is actually required.

unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Fretwell, supra at 369, citing, United States v. Cronic, 466 U.S. 648, 653 (1984). The touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding, and "in judging prejudice and the likelihood of a different outcome, '[a] defendant has no entitlement to the luck of a lawless decisionmaker.'" Fretwell, supra at 370, citing, Strickland, supra at 695.

Here, even if the movant had testified, challenging the government's evidence, and further making a blanket assertion of innocence as to the charged offenses under attack here, no showing has been made that this would have affected the outcome of the proceeding, given the more than sufficient evidence adduced at trial, viewed in the light most favorable to the government, which included the testimony of the movant's co-conspirators and the movant's pre-trial recorded statements. The evidence at trial amply demonstrates that the movant was actively involved in the offenses of conviction. Thus, it is not likely that the result of the trial would have been different had the movant testified. On cross-examination, the prosecutor would have been able to elicit from the movant the fact that he had been previously convicted of 59 different felonies. See PSI. Consequently, the movant is not entitled to relief on this claim.

Under **claim 3**, the movant argues that trial counsel was ineffective for failing to call any witnesses to testify. (Cv DE# 1, p. 40).

In particular, the movant alleges that defense counsel should have located and called Walter Brown to testify. The movant does not proffer the details of the testimony Brown would have provided at trial. In addition, the movant asserts that counsel should have called his girlfriend, Melissa Castillo, to testify that the gun found in Henry Wainwright's possession belonged to her and that Wainwright had taken it from her. This testimony was presented to the jury through Richitelli's post-arrest statement to the police. See (Cr DE# 263, 618).

Thus, no deficient performance or prejudice in this regard has been established. See Strickland, supra; United States v. Costa, 691 F.2d 1358 (11th Cir. 1982); Coco v. United States, 569 F.2d 367 (5th Cir. 1978). Decisions whether to call a particular witness or not to cross-examine certain witnesses are generally questions of trial strategy. See Dorsey v. Chapman, 262 F.3d 1181, 1186 (11 Cir. 2001)(holding that petitioner did not establish ineffective assistance based on defense counsel's failure to call expert witness for the defense in that counsel's decision to not call the expert witness was not so patently unreasonable a strategic decision that no competent attorney would have chosen the strategy). See also United States v. Costa, 691 F.2d at 1364. Neither Brown's nor Castillo's testimony would have altered the outcome at trial. Accordingly, the movant is not entitled to relief on this ground.

Under **claim 4**, the movant alleges that trial counsel was ineffective for failing to properly cross-examine the government's witnesses. (Cv DE# 41). The movant specifically takes issue with defense counsel's cross examination of Agent Starky. (Cv DE# 1, p. 42).

Regarding counsel's cross examination of Agent Starky and the other government witnesses, independent review of the record reveals that counsel vigorously attacked the credibility of the numerous government witnesses, calling into question their motives for testifying, and their recollection of the events. As is noted by the respondent in the instant proceedings, defense counsel asked government witnesses over one thousand questions which covered 160 pages of the trial transcript. Even if counsel had further questioned the government witnesses, given the evidence adduced at trial, no showing has been made in this collateral proceeding that further investigation, cross-examination, and/or impeachment, would have altered the outcome of the movant's trial. Consequently, movant cannot satisfy Strickland's prejudice prong, and is thus entitled to no relief on this claim.

Under **claim 5**, the movant alleges that he was denied his right to a fair trial because his lawyer was operating under an actual conflict of interest. (Cv-DE# 1, p. 43-47).   Specifically, he asserts that his attorney was afraid of him. (Id. at 44).

The law is clear that a movant claiming that counsel labored under a conflict of interest in violation of the Sixth Amendment must demonstrate that:   (1) his attorney had an actual, not speculative, conflict of interest, and (2) the  conflict adversely affected counsel's performance. United States v. Novaton, 271 F.3d 968, 1010-1011 (11 Cir. 2001), citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980); Mickens v. Taylor, 535 U.S. 162 (2002); accord, United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003); Hunter v. Secretary, Dept of Corrections, 395 F.3d 1196 (11th Cir. 2005). A defendant who fails to show both an actual conflict and an adverse affect is not entitled to relief. United States v. Novaton,

271 F.3d 968, 1010 (11 Cir. 2001); <u>Burden v. Zant</u>, 24 F.3d 1298, 1305 (11 Cir. 1994).

The Eleventh Circuit has adopted a test to distinguish actual from potential conflicts in the context of joint representation of codefendants. The movant must "point to specific instances in the record to suggest an actual conflict or impairment of their interests, make a factual showing of inconsistent interests, and demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." <u>Barham v. United States</u>, 724 F.2d 1529, 1532 (11th Cir.), <u>cert. den'd</u>, 467 U.S. 1230 (1984); <u>see also, Porter v. Wainwright</u>, 805 F.2d 930, 939-40 (11th Cir. 1986); <u>see e.g.</u>, <u>Turnquest v. Wainwright</u>, 651 F.2d 331, 333 (5th Cir. 1981); <u>Freund v. Butterworth</u>, 165 F.3d 839, 859 (11th Cir. 1999), <u>quoting</u>, <u>Smith v. White</u>, 815 F.2d 1401, 1405 (11th Cir. 1987).  No such showing has been made here.

It is true that a movant need not show that the result of the proceeding would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance. <u>Strickland</u>, 466 U.S. at 694. To prove an adverse effect, a defendant must: 1) "point to some plausible alternative defense strategy or tactic" that might have been pursued, 2) "demonstrate that the alternative strategy or tactic was reasonable"[3] under the facts in his case, and 3) "show some link between the actual conflict and the decision to forgo the

---

[3]Because prejudice is presumed under <u>Strickland</u>, 466 U.S. at 692, the movant "'need not show that the defense would necessarily have been successful if [the alternative strategy or tactic] had been used,' rather he only need prove that the alternative 'possessed sufficient substance to be a viable alternative.'" <u>Freund</u>, 165 F.2d at 960, <u>citing</u>, <u>United States v. Fahey</u>, 769 F.2d 829, 836 (1st Cir. 1985).

alternative strategy of defense."[4] Novaton, supra at 1011, citing
Freund v. Butterworth, 165 F.3d 839, 860 (11 Cir. 1999) (en banc).
In the absence of a showing of an "adverse effect," prejudice is
not presumed to flow from a conflict of interest. Id.

In this case, no actual conflict or adverse effect has been
demonstrated.  Instead, the movant asserts vague speculations that
his attorney's fear of him adversely affected his defense.  These
allegations are insufficient to establish a conflict of interest in
violation of the movant's constitutional rights. Thus, he is not
entitled to relief on this ground.

In conclusion, it is evident that the movant received vigorous
and able representation, more than adequate under the Sixth
Amendment standard; therefore, counsel's performance was not
ineffective. Given the evidence adduced at trial, no showing has
been made that the outcome of the proceeding would have been
different and the movant would have been acquitted of the offenses,
but for counsel's alleged deficiencies throughout all of the stages
of the proceedings, as maintained by the movant in this collateral
proceeding. Under these circumstances, the movant has failed to
establish prejudice stemming from counsel's alleged deficient
performance, pursuant to Strickland v. Washington, 466 U.S. 668
(1984), and is therefore entitled to no relief on these claims.

Finally, the movant's request for an evidentiary hearing on
his claims of ineffective assistance of counsel should be denied.
A hearing is not required on patently frivolous claims or those
which are based upon unsupported generalizations or affirmatively

---

[4]In other words, he must establish that the alternative defense was
inherently in conflict with or not undertaken due to the attorney's other
loyalties or interests. Novaton, supra at 1011, citing, Freund, 165 F.3d at 860.

contradicted by the record. <u>See</u> <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989), <u>citing</u>, <u>Guerra v. United States</u>, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

IV.   Conclusion

It is therefore recommended that the motion to vacate entered under 28 U.S.C. §2255 be denied and the case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 5th day of March, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Jay Anthony Richitelli
    91149-004
    USP - Coleman II
    United States Penitentiary
    Inmate Mail/Parcels
    Post Office Box 1034
    Coleman, FL 33521

    Donald F. Chase, II
    United States Attorney's Office
    500 E Broward Boulevard
    7th Floor
    Fort Lauderdale, FL 33301-3002